```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

                    Plaintiff,
                                            MEMORANDUM AND ORDER
     - against -
                                            10 Civ. 7462 (NRB)
PORT AUTHORITY OF NEW YORK AND NEW
JERSEY,

                    Defendant.
------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

The Equal Employment Opportunity Commission (the "EEOC") brings this action against the Port Authority of New York and New Jersey ("Port Authority"), alleging violations of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1) (the "EPA"), among a class of non-supervisory female attorneys in Port Authority's in-house law department.[1] Presently before us is Port Authority's motion for judgment on the pleadings.[2]

---

[1] The EEOC is also asserting violations of the Age Discrimination and Employment Act, 29 U.S.C. § 623, but Port Authority is not here moving on those claims.

[2] Although styled as a motion for summary judgment, the motion is properly considered made under Federal Rule of Civil Procedure 12(c). Port Authority recognized the applicability of this rule but moved for summary judgment under Rule 56 so that we could consider documents outside the pleadings. (Mem. of Law in Supp. of Def.'s Mot. for Partial Summ. J. on the Pleadings for Pl.'s Failure to State a Claim Under the Equal Pay Act 9 n.2.) However, except for the EEOC's responses to Port Authority's contention interrogatories (Aff. of Konrad Batog in Opp'n to Def.'s Mot. for Partial Summ. J. and in Supp. of EEOC's Rule 56(d) Cross-Mot. for Discovery, Ex. 8 (the "Responses")), no discovery has yet been exchanged. With the parties' consent (Tr. of Oral Arg. 1:15-2:6), we construe the answers to those interrogatories as a functional amendment to the complaint and treat the motion as one for judgment on the pleadings. See Fed. R. Civ. P. 16(c)(2)(B), (E) (a court may "take appropriate action" on "amending the pleadings" and

1

For the reasons stated herein, Port Authority's motion is granted.

## BACKGROUND[3]

In 2007, a female attorney employed in Port Authority's law department filed a charge of discrimination with the EEOC, alleging that she was paid a lower salary than comparably situated men in the department. The EEOC commenced a three-year investigation into those and similar allegations before issuing a determination letter that Port Authority had violated the EPA in 2010. Port Authority did not engage in conciliation, and the EEOC commenced the instant lawsuit on September 29, 2010.

The complaint and Responses allege that, since at least January 1, 2006, Port Authority has violated the EPA with respect to a class of fourteen non-supervisory female attorneys in Port Authority's law department. The complaint alleges that these attorneys are paid less than male attorneys "who have substantially similar lengths of service and experience" and who "hav[e] the same job code" for "jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." (Compl. ¶ 10(a)-

---

"determining the appropriateness and timing of summary adjudication under Rule 56"); cf. Haitian Ctrs. Council, Inc. v. Sale, 823 F. Supp. 1028, 1033-34 (E.D.N.Y. 1993) (court granted leave to amend complaint in light of new claims disclosed by contention interrogatories). The EEOC's cross-motion for discovery under Rule 56(d) is thus denied as procedurally improper.

[3] These facts are derived from the complaint, the Responses, and, only where necessary for context, the Court's files and the undisputed facts in the parties' Statements of Material Fact pursuant to Local Civil Rule 56.1.

...

Case 1:10-cv-07462-NRB Document 40 Filed 05/17/12 Page 3 of 17

(c).) The complaint does not identify any male comparators or provide further detail with respect to the job comparison. Port Authority filed its answer to the complaint on January 21, 2011 and amended it ten days later.

In May of 2011, Port Authority requested leave to move for judgment on the pleadings. At a June 7, 2011 conference, the Court denied the request, noting that, at most, such a motion would simply result in the EEOC filing an amended complaint. Rather, the Court directed the EEOC to respond to contention interrogatories so that Port Authority could better determine the grounds of the EPA claim. Port Authority served its interrogatories ten days later, and the EEOC responded on July 18, 2011. The Responses include a list of potential comparators for the relevant female attorneys and attempt to substantiate the EEOC's determination that the claimants and comparators are similarly situated because their jobs involve equal skill, effort, and responsibility.

In particular, Response 13 contends that the claimants' and comparators' jobs involve the same level of skill because they "do not require different experience, training, education, or ability." Rather, they involve "the same professional degree and admission to the bar," "problem-solving and analytical skills to identify, research, analyze, evaluate, and resolve legal issues clearly and persuasively," "the use of professional judgment and

3

legal skills to draft, review and implement legal documents," "the ability to understand and comply with department, agency, and legal instructions and procedures," "the ability to consult with and provide legal advice to the same client," "the ability to interact and consult with outside legal staff or other Port Authority attorneys on client matters," "the same degree of diligence and persistence," and "the ability to manage time, meet deadlines, and prioritize assignments."

Response 15 makes similarly broad statements about the effort required of all attorneys in the law department. It notes that the jobs are "performed under time pressures and deadlines" and "require the same problem-solving and analytical efforts, the same efforts to draft, review, and implement legal documents, the same efforts to consult with and provide legal advice to the Port Authority, and the same efforts to interact and consult with outside legal staff or other Port Authority attorneys on client matters."

With respect to the responsibilities afforded the claimants and comparators, the EEOC provided a somewhat more tailored response. It contended in Response 16 that their jobs "require the same degree of accountability and supervision" because they "are all non-supervisory and have substantially the same reporting structure and the same level of supervision." It further noted that the jobs "are of equal significance" to Port

4

Authority, all requiring the attorneys to "be able to respond to and act on behalf of the General Counsel" and exercise "independent judgment and discretion subject to the same level of oversight," and that the decisions resulting therefrom "affect the Port Authority's rights and liabilities."

These responses make clear that the EEOC is treating "all of the non-supervisory attorney jobs in [the] law department [as] substantially equivalent and requir[ing] the same skill, effort, and responsibility." (Response 22.) The EEOC justified this treatment in Response 14, which notes that "[t]he claimants and the comparators are in the same job grade or code" and hold "the same position title," as well as that "[t]he attorney maturity curve does not differentiate between divisions when setting a lower and upper limit on salaries based on years of legal experience." It further substantiates this treatment as justified because "[t]here are no job descriptions identifying different duties for the jobs" and "[t]he same criteria are used across all jobs to evaluate performance competencies, including project management, resource management, decision making and problem solving, technical expertise/background, communication, customer service, flexibility and adaptability, persuasion and influence, interpersonal skills, political acumen, and professional demeanor," as well as "[q]uality of work product, efficiency and timeliness, courtesy and collegiality, client

satisfaction, and attendance." Moreover, "the subject areas practiced in [the] legal department have not been discrete or unconnected"; "[t]he same legal functions have been handled by various legal divisions, practice areas, and jobs"; and "[l]egal divisions have also been consolidated," abolishing "formal divisional lines[] and creat[ing] a business model that assigned work to attorneys working out of one litigation unit."

After receiving the Responses, Port Authority renewed its request for leave to dismiss the EPA claim. At an August 22, 2011 conference on that request, the EEOC agreed with the Court that its theory is that, at least at Port Authority, "an attorney is an attorney is an attorney." (Hr'g Tr. 6:6-7:6.) The Court subsequently granted Port Authority leave to file this motion, which it did on September 28, 2011.

## DISCUSSION

### I. Legal Standard

The standard for evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c) is the same as the standard applicable to a motion to dismiss under Rule 12(b)(6). See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Accordingly, we accept as true all well-pleaded facts alleged in the pleadings -- including, in this case, the Responses -- and draw all reasonable inferences in plaintiff's favor. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229,

237 (2d Cir. 2007). Mere "legal conclusions, deductions or opinions couched as factual allegations," however, need not be accepted as true. Cal. Pub. Emps.' Ret. Sys. v. N.Y. Stock Exchange, Inc. (In re NYSE Specialists Sec. Litig.), 503 F.3d 89, 95 (2d Cir. 2007) (internal quotation marks and alteration omitted).

The pleadings must include "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." Id. Employment discrimination claims are not subject to a heightened pleading requirement, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002); see also Twombly, 550 U.S. 544, 569-70 (2007) (preserving the holding of Swierkiewicz), and therefore -- to survive a motion for judgment on the pleadings -- need not establish a prima facie case, but must still be facially plausible and provide fair notice of the basis of the claims, see Goodman v. Merrill Lynch & Co., 716 F. Supp. 2d 253, 259-60 (S.D.N.Y. 2010).

II. **The Equal Pay Act Claim**

The EPA prohibits an employer from discriminating on the basis of sex by paying employees of one sex less than that which it pays to employees of the other sex "for equal work on jobs

7

the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). Differential payments are, however, permitted when based on seniority, merit, quantity or quality of output, or "any other factor other than sex." Id. § 206(d)(1)(i)-(iv).

### A. "Equal Work" Standards

The instant motion focuses on whether the EEOC has adequately alleged that the claimants and comparators perform "equal work." This determination requires an examination of the content of the jobs themselves, not of the employees. See, e.g., EEOC, Compliance Manual § 10-IV(E)(2) (2000) ("The important comparison in determining whether the 'equal work' requirement is met is the comparison of the jobs, not the people performing the jobs."). Likewise, superficial comparisons based on job title or code are insufficient. See id. ("Job content, not job titles or classifications, determines the equality of jobs."); 29 C.F.R. § 1620.13(e) ("Application of the equal pay standard is not dependent on job classifications or titles but depends on actual job requirements and performance."); Tomka v. Seiler Corp., 66 F.3d 1295, 1310 (2d Cir. 1995) ("[T]he standard under the Equal Pay Act is job content and not job title or description."); see also Sigmon v. Parker Chapin Flattau & Klimpl, 901 F. Supp. 667, 679 (S.D.N.Y. 1995) (comparing job

8

content, rather than simply titles, of attorneys). The jobs need not be identical, but they also may not simply be comparable. See Lambert v. Genesee Hosp., 10 F.3d 46, 56 (2d Cir. 1993). Rather, they must be "substantially equal in skill, effort, and responsibility." Lavin-McEleney v. Marist Coll., 239 F.3d 476, 480 (2d Cir. 2001) (internal quotation marks omitted).

The EPA's implementing regulations provide further color on how to evaluate the skill, effort, and responsibility required of a job. When determining whether the claimants' and comparators' jobs require the same "skill," we should consider "such factors as experience, training, education, and ability." 29 C.F.R. § 1620.15(a). If the amount or degree of skill required for one job is significantly different from that required for another job, they cannot be deemed equal, regardless of how similar they otherwise are. See id. The "effort" prong measures "the physical or mental exertion needed for the performance of a job," id. § 1620.16(a), while "responsibility" concerns "the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation," id. § 1620.17(a).

    B.    **The EEOC's Allegations of Equal Work Are Insufficient**

        1.    Equal Skills, Effort, and Responsibility

Standing alone, the complaint is clearly insufficiently pleaded. Its conclusory allegation that Port Authority pays "its

non-supervisory female attorneys at rates less than the rates paid to male employees . . . for substantially equal work for jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions" (Compl. ¶ 10(a)) does nothing more than track the language of the statute. The only remotely substantive allegations are that the relevant attorneys "have substantially similar lengths of service and experience" and "hav[e] the same job code." (Id. ¶ 10(b), (c).) These allegations do not speak at all to the effort or responsibility required of the jobs, and they mention the requisite skill only cursorily. Without more, they are insufficient to meet the plausibility and fair notice standard. See Goodman, 716 F. Supp. 2d at 261 ("[M]ere conclusory statements and recitations of the elements of a cause of action will not satisfy the plausibility standard.").

The Responses readily rectify the deficiencies in the complaint with respect to responsibility. Response 16 alleges that the claimants' and comparators' jobs "are all non-supervisory and have the same reporting structure and the same level of supervision," as well as that they require Port Authority attorneys to "be able to respond to and act on behalf of the General Counsel" in a way that "affect[s] the Port Authority's rights and liabilities." These are allegations that are specific to Port Authority attorneys and directly address

10

the jobs' "degree of accountability" and "importance of the job obligation." 29 C.F.R. § 1620.17(a). That element of "equal work" is adequately alleged.

The same cannot be said as far as the other elements are concerned. Responses 13 and 15 -- addressing skill and effort, respectively -- do little more than recite broad generalities about attorneys in general, rather than say anything about Port Authority's attorneys in particular. While it is no doubt true that the attorneys in Port Authority's law department all have "the same professional degree and admission to the bar," utilize "problem-solving and analytical skills" as well as "professional judgment and legal skills," and work "under time pressures and deadlines," the same may be said of virtually any practicing lawyer. We are hard-pressed to deem a listing of these abstract generalities a true comparison of the content of the jobs at issue, and the few nods to Port Authority in the descriptions -- e.g., that the jobs involve "the same efforts to interact and consult with outside legal staff or other Port Authority attorneys on client matters" -- do not persuade us otherwise. Cf. 29 C.F.R. § 1620.13(e).

      2.   Port Authority's
           Differentiation Between Attorneys

The EEOC, however, advances a further argument. Essentially, it contends that it need not describe in detail the

11

requirements of the claimants' and comparators' jobs if Port Authority does not itself treat the jobs as different. If Port Authority does not differentiate between its attorneys, then, the argument proceeds, Port Authority has functionally conceded that all of the jobs in its law department require the same skills, effort, and responsibility.

In support of this idea, Response 14 points to several features of the law department, which may be grouped into four broad allegations. First, "[t]he claimants and the comparators are in the same job grade or code" and hold "the same position title," namely, "Attorney." Second, Port Authority applies "similar performance objectives" to the jobs, including certain competencies in its evaluations of all attorneys. Third, the attorneys do not necessarily practice in discrete, unconnected subject areas, but rather "have moved around to work in various subject areas in [Port Authority's] legal department." Finally, the attorney maturity curve, which dictates upper and lower ranges of salaries for Port Authority's attorneys at varying levels of legal experience, "does not differentiate between divisions" in the law department.

We do not give the first allegation any weight. As noted previously, job codes and titles are simply not a sufficient basis on which to premise an EPA claim because they are not a

12

reflection of job content.[4] See EEOC, Compliance Manual § 10-IV(E)(2); 29 C.F.R. § 1620.13(e); Tomka, 66 F.3d at 1310.[5]

Nor are we persuaded by the EEOC's second allegation. The specific criteria the EEOC cites as used by Port Authority to evaluate its attorneys are as blandly generic as the "skills" the EEOC contends the attorneys share. They include things like "project management," "communication," "flexibility and adaptability," "efficiency and timeliness," and "attendance." Such broad categories, though nominally identical, may be used to evaluate different employees on different scales. The expectations for a newly hired contract attorney with respect to managing projects may -- and should -- be vastly different from those for a senior appellate litigator. The same is true of the other criteria as well. That they are used as guidelines for evaluating all of Port Authority's attorneys thus does not shed light on whether the attorneys are actually evaluated against the same reference points.

---

[4] The same is true of the fact that the attorneys all work out of a unified litigation unit.

[5] At oral argument, the EEOC contended that Marshall v. Building Maintenance Corp., 587 F.2d 567, 570-71 (2d Cir. 1978), stood for the proposition that a job classification system -- such as titles and codes -- that has not been repudiated by the employer is probative of whether two jobs are the same. (Oral Arg. Tr. 12:7-13.) Marshall, however, dealt only with job descriptions that specifically enumerated tasks performed, which codes and titles do not, and the EEOC has specifically alleged that Port Authority's attorney jobs do not have job descriptions (Response 14). Regardless, the EEOC's argument is contradicted by other authorities.

13

The EEOC's allegation that the work performed by Port Authority attorneys does not clearly fall into specific divisions is likewise insufficient. While it suggests that comparators need not necessarily be drawn from the same department as the claimant, it does not speak to the actual content of the jobs. If anything, the allegation supports a conclusion that we know even less about the content of the claimants' and comparators' jobs than might be the case if divisions were clearly demarcated. Similarly, the fact that attorneys may be moved between divisions does not mean that all attorneys at Port Authority are required to have the same skills. Lateral moves between subject areas may require different skill sets and levels of effort, cf. EEOC, Compliance Manual § 10-IV(E)(2) ("The fact that jobs are in different departments is not determinative, although in some cases it may be indicative of a difference in job content."), and only be asked of those who have the ability to satisfy the requirements, cf. 29 C.F.R. § 1620.15(a) ("Possession of a skill not needed to meet the requirements of the job cannot be considered in making a determination regarding equality of skill."). This allegation blurs the lines between divisions, but it does not demonstrate that, at Port Authority, any given attorney does the same work as all other attorneys.

The final allegation -- that the attorney maturity curve does not utilize an attorney's division in setting a potential pay range -- is the most persuasive but, ultimately, also fails to sustain the EEOC's complaint. The EPA's implementing regulations advise that, "[i]n determining whether job differences are so substantial as to make jobs unequal, it is pertinent to inquire whether and to what extent significance has been given to such differences in setting the wage levels for such jobs." Id. § 1620.14(a). If the Port Authority does not recognize divisional differences as relevant for the purposes of setting wages, "the facts as a whole [may] support the conclusion that the differences are too insubstantial to prevent the jobs from being equal in all significant respects under the law." Id. However, the maturity curve's failure to explicitly account for divisions does not indicate that Port Authority does not utilize an attorney's division or other factors in setting wages. The maturity curve specifies ranges of possible salaries based on experience; determinations of specific salaries within those ranges must be based on other factors. The EEOC has alleged without substantiation that those determinations are based on sex, but -- without any analysis of job content -- we cannot rely on that bald assertion.

More importantly, "the facts as a whole" do not support the idea that Port Authority's attorneys are paid without respect to

15

a multitude of legitimate factors. It strains credulity to argue that Port Authority, which does not set wages based on a lockstep scale, does not factor into its pay decisions the kind and quality of work its attorneys perform. The allegations as a whole simply do not rise to the requisite level of facial plausibility.

The EEOC has thus failed -- despite a three-year investigation -- to state an EPA claim upon which relief may be granted in its complaint as supplemented by the Responses, and we therefore dismiss that claim.

CONCLUSION

For the foregoing reasons, Port Authority's motion (docket no. 21) is granted, and the EEOC's cross-motion for discovery (docket no. 29) is denied.

Dated:   New York, New York
         May 16, 2012

                                      NAOMI REICE BUCHWALD
                                      UNITED STATES DISTRICT JUDGE


Copies of the foregoing Order have been mailed on this date to the following:

**Attorney for Plaintiff**
Konrad Batog, Esq.
Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, NY 10004

**Attorneys for Defendant**
Rosemary Alito, Esq.
Laura A. Stutz, Esq.
K&L Gates LLP
One Newark Center, Tenth Floor
Newark, NJ 07102